# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JANE DOES 1-5,

        Plaintiffs,

    v.

CITY OF CHICAGO, a municipal
Corporation,

        Defendant.

Case No. 18-cv-03054

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' motion to sanction Defendant for failure to preserve evidence, Doc. [194], Plaintiffs' motion to file Exhibit B thereto under seal, Doc. [195-96], and Plaintiffs' motion to strike a portion of Defendant's response to its motion for sanctions. Doc. [216]. These discovery motions arise from a lawsuit alleging sexual harassment, retaliation, disparate treatment, and sex discrimination brought by five female paramedics against the City of Chicago. The motions discussed herein primarily pertain to Jane Doe 1.

The issue in this case requires the Court to determine whether a recording, which Plaintiff claims was not preserved, actually exists, and if it did, whether the duty to preserve attached in time and warranted preservation, and finally, whether Plaintiff has suffered any prejudice from the alleged destruction. For the reasons stated below, Plaintiffs' motion for sanctions is denied in its entirety.

I. **Plaintiffs' Motion to Sanction Defendant for Failure to Preserve Electronically-Stored Evidence**

A. **Background**

Plaintiffs move for sanctions under Rule 37(e)(1), claiming that Defendant failed to preserve an electronic recording of a radio communication made during a drill on October 28, 2017. This radio communication relates to Plaintiffs' allegation that Field Chief Richard Raney "called Jane Doe 1's ambulance over the radio" during a drill and "berated Jane Doe 1 in a harsh tone stating that she was not to question him and to do as she was told." Doc. [1] at ¶¶ 49-50. Plaintiffs argue that this recording will show the contents and tone that Raney directed towards Jane Doe 1, after she allegedly rebuffed his advances, and is therefore evidence of a hostile work environment and retaliation. To sanction Defendant for the alleged destruction, Plaintiffs request "that they be allowed to present evidence to the jury regarding the destruction of the OEMC recording and the likely relevance of the lost information; and that the jury shall be instructed that it may consider this information when making its decision." Doc. [194] at 13. Plaintiffs also seek a host of other sanctions relating to summary judgment proceedings.

Defendant counters that no such recording was ever made. Additionally, Defendant reasons that even if the radio communication was recorded, its preservation obligation was not triggered before its regularly-scheduled destruction. Defendant further contends that even if a recording existed and it did have enough notice to trigger its preservation obligations, Plaintiffs' motion should nevertheless be denied for lack of prejudice and that their requested sanctions are unwarranted. The Court addresses these arguments in turn.

B. **Legal Standard**

The Federal Rules of Civil Procedure gives the Court the authority to sanction a party for failure to preserve electronically stored documents. *See* Fed R. Civ. P. 37(e). To find that sanctions

for spoliation are appropriate, courts have determined that there must be: (1) a duty to preserve the specific documents and/or evidence, (2) that the duty was breached, (3) that the other party was harmed by the breach, and (4) that the breach was caused by the breaching party's fault. *See, e.g.*, *Love v. City of Chicago*, No. 09 C 03631, 2017 WL 5152345, at *4 (N.D. Ill. Nov. 7, 2017) (internal citation omitted); *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010). (internal citation omitted); *Wells v. Berger, Newmark & Fenchel, P.C.*, No. CIV.A. 07 C 3061, 2008 WL 4365972, at *6 (N.D. Ill. Mar. 18, 2008) (internal citation omitted). Moreover, Rule 37(e) was amended in 2015 to address the circumstances under which sanctions could be imposed for spoliation. Now, under Rule 37(e), the Court must determine that: (1) the ESI should have been preserved in anticipation of litigation; (2) the ESI is lost; (3) the party failed to take reasonable steps to preserve it; and (4) it cannot be restored or replaced through additional discovery.

The duty to preserve does not necessarily start when a formal discovery request is made because a variety of events may alert a party to the prospect of litigation. *See id.*; *see also Wells*, 2008 WL 4365972, at *6 (internal citation omitted). Indeed, the duty to preserve can be triggered much earlier than a discovery request and even the filing of a Complaint in a district court. The inquiry is one based on the specific circumstances and facts and whether those facts give rise to a reasonable foreseeability that litigation will ensue. "Often these events provide only limited information about that prospective litigation, however, so that the scope of information that should be preserved may remain uncertain. It is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed." Fed. R. Civ. P. 37, 2015 Amendment Advisory Committee Notes. Thus, the Court must carefully review the kinds of information that reasonably should have been preserved even when the duty attaches to preserve electronically

stored information before litigation commences. Moreover, a key finding since the 2015 amendments, before sanctions can be considered, is that the destroyed material cannot be replaced or restored through additional discovery. Fed. R. Civ. P. 37(e).

### C. The Existence of the Recording

The Court first addresses whether there was a duty to preserve the radio communication between Raney and Jane Doe 1 that took place during a drill on October 28, 2017. *See Trask-Morton*, 534 F.3d at 681. Interestingly, in this case, the parties dispute whether the radio communication was recorded in the first place. Of course, there cannot be a duty to preserve evidence that never existed. *See Love*, 2017 WL 5152345, at *5.

A similar circumstance was faced by the district court in *Love*. In that case, the plaintiff sought production of any existing recordings of a call she made to report a police officer to the Office of Professional Standards shortly after calling 911. *Id.* at *4. Relying on the defendant City of Chicago's attorney's statement that no recordings were made, *Love* concluded that such "production is not possible, because [the Office of Professional Standards] did not have a policy of recording phone calls . . . nor was any call actually recorded." *Id.* (citing Defs.' Resp. Br. Doc. No. [487] at 7).

After considering all the facts, as discussed below, the Court finds that there is more evidence in the record than in *Love* to demonstrate that the relevant communication was unrecorded. Doc. [212] at 6. Specifically, Defendant City of Chicago has supplied three declarations that state any communications between paramedic personnel (*i.e.*, between Raney and Jane Doe 1) would have taken place over an unrecorded "tactical" radio channel rather than the recorded "JNT OPS" and "CW Fire" channels. Doc. [212] at 6. These Declarations include Defendant's Deputy Fire Commissioner Timothy Sampey, Doc. [212-1] at 39-40, Defendant's

Assistant Deputy Fire Commissioner Mary Sheridan, Doc. [212-1] at 48-49, and Field Chief Richard Raney. Doc. [212-1] at 51-52. Notably, Plaintiff Jane Doe 1 did not submit a contradictory declaration even though she was a participant on the radio channel when Raney allegedly berated her.

In Deputy Fire Commissioner Timothy Sampey's declaration, Sampey stated that the October 28, 2017 drill's radio communications used three radio channels: "CW Fire," "JNT OPS," and "tactical channels" such as "UHF Analog Simplex." Doc. [212-1] at 40. Sampey's declaration notes that the "tactical channels" are not recorded while both "CW Fire" and "JNT OPS" are recorded. Doc. [212-1] at 40, ¶¶ 8-13. According to Sampey, the three channels each have a distinct purpose, as follows. First, the JNT OPS channel would have been used only for the Chicago Fire Department to Communicate with the Chicago Police Department. Doc. [212-1] at 40, ¶ 10. Second, the CW Fire channel would have been used as the dispatch channel, that is, the channel used to dispatch units to scene. Doc. [212-1] at 40, ¶ 11. Sampey's declaration states that radio communications between Paramedic personnel during the October 28, 2017 drill would not have been over the recorded JNT OPS channel or CW Fire Channel but over an unrecorded tactical channel. Doc. [212-1] at 40, ¶¶ 12-13.

In Assistant Deputy Fire Commissioner Mary Sheridan's declaration, she states that she was present at the October 28, 2017 drill and *heard* the radio communication between Raney and Jane Doe 1. Doc. [212-1] at 48, ¶¶ 4, 7. Sheridan's declaration similarly states that this communication would have taken place over an unrecorded tactical channel because it was a radio communication between paramedic personnel. Doc. [212-1] at 48, ¶ 7.

Last, Defendant attached a declaration from Field Chief Raney himself. Doc. [212-1] at 51-52. In his declaration, Raney states that he "communicated with Jane Doe 1 over the radio

during the drill" and that "[a]ny communication that I would have had with Jane Doe 1 would have been over a 'tactical' channel which I understand are not recorded by the OEMC or Chicago Fire Department." Doc. [212-1] at 51, ¶¶ 5-6.

Jane Doe 1's only statement in the record that goes to which radio channel she was using is found in her internal human resources complaint that states: "[Raney] called my ambulance over the radio. I responded, identifying my ambulance and said we were the [Rapid Intervention Team] ambulance. He said something like 'you are to do as I say, you are to do as you're told, do not question me.' *This was over the drill frequency*." Doc. [195] at 10 (emphasis added). But the record does not indicate that there was a radio channel called "drill frequency," and both recorded and unrecorded channels were used during the drill. So, Jane Doe 1's characterization of a "drill frequency" is not definitive as to whether a recorded or unrecorded radio channel was used.

Rather than attach a declaration or affidavit of Jane Doe 1, Plaintiffs argue that the October 28, 2017 radio communication would have occurred on a "Dispatch Channel, all of which are recorded" because her assignment during the drill was "to respond to any 'real' emergencies." Doc. [218] at 2. In support of this theory, Plaintiffs rely on the "Chicago Fire Department – Incident Radio Communications Plan (ICS 205)" attached by Defendant in response to this motion. Doc. [212-1] at 44. The Radio Communications Plan provides seven special instructions. Plaintiffs point to the "actual incident" and "emergency" special instructions that provide for the use of recorded "JNT OPS" and "CW FIRE" channels. Doc. [218] at 2; Doc. [212-1] at 44. First, the "actual incident" special instruction provides that in "the event of an actual incident . . . the Fire Alarm Office or applicable shall notify CFD Command and the Command Van on JNT OPS. CFD Command Staff shall evaluate the incident and stop the drill if necessary." Doc. [212-1] at 44. Although Jane Doe 1 indicated that there was indeed a "real world patient," Doc. [195] at 10,

the Radio Communications Plan only provides that JNT OPS would be used to notify CFD Command and the Command Van. Doc. [212-1] at 44. There is no indication or argument that Jane Doe 1 was serving as CFD Command or in the Command Van so even if the "actual incident" special instruction was triggered, that instruction does not necessarily mean that the radio communication between Raney and Jane Doe 1 occurred over JNT OPS. Doc. [212-1] at 44. Second, there is no indication that the emergency special instruction was triggered. The emergency special instruction provides that in "the event of an EMERGENCY, persons witnessing the emergency shall verbally state, 'EMERGENCY, EMERGENCY, EMERGENCY…' on the frequency being used and the drill will stop . . . All CFD units will change channels to (SE: CW FIRE) and standby for direction." Doc. [212-1] at 44 (ellipsis in original). Nothing in the record suggests that the verbal statement was made, which would have triggered this special instruction's protocol to then use the recorded CW FIRE channel. Doc. [212-1] at 44.

Rather, the three declarations submitted by Defendant and made under penalty of perjury are convincing evidence that the relevant radio communication was never recorded in the first place. Raney, a participant in the communication, has stated that his statements would have been made over an unrecorded channel. Sheridan, who heard the radio communication while it occurred, similarly declares that it would have been unrecorded. Sampey's declaration echoed Raney's and Sheridan's declarations in that it would have occurred over an unrecorded channel. These declarations, combined with Jane Doe 1's failure to provide a declaration as to her recollection, support a finding that the October 28, 2017 radio communication between Raney and Jane Doe 1 was *not* recorded. As there is no duty to preserve that which does not exist, Plaintiffs' motion for sanctions is denied.

## D. The Duty to Preserve

Although Plaintiffs' motion for sanctions is denied as the relevant radio communication was never recorded, for completeness, the Court analyzes Plaintiffs' motion *as if* the radio communication had been recorded. *If* it was recorded, Defendant would have had a duty to preserve when it "knew, or should have known, that litigation was imminent" or reasonably foreseeable, and that the radio communication was material to that prospective litigation. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (internal citation omitted); *see also Wells*, 2008 WL 4365972, at *6 ("A party has a duty to preserve evidence over which it had control and reasonably knew or could reasonably foresee was material to a potential legal action"); Fed. R. Civ. P. 37, 2015 Amendment Advisory Committee Notes ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable.").

Plaintiffs claim that there are four instances that purportedly serve as "distinct notices that litigation would be forthcoming" which triggered Defendant's obligation to preserve the October 28, 2017 radio communications between Raney and Jane Doe 1. Doc. [194] at 6. These four notices are discussed in turn.

First, Plaintiffs cite a demand letter sent on November 14, 2017 from Jane Doe 1's counsel to CFD General Counsel Aaron DeCamp and Assistant Deputy Fire Commissioner Mary Sheridan. Doc. [212-1] at 101-2. A demand letter threatening litigation may trigger the duty to preserve documents within its scope. *See Trask-Morton*, 534 F.3d at 681. The Court finds that this demand letter put Defendant on notice that litigation concerning Raney's treatment of Jane Doe 1 was imminent and reasonably foreseeable for the following reasons. First, it explicitly threatened legal action: "[Jane Doe 1] will seek immediate legal action to ensure the following if the Department

does not take action prior to her next shift which is Friday, November 14, 2017 . . . ." Doc. [212-1] at 102.  Second, its allegations are particularly serious such that they could yield litigation because it claims that Raney used sexually inappropriate language with Jane Doe 1, sexually propositioned her numerous times through text messages and in person, entered a dark room while Jane Doe 1 was in bed and blocked the door to prevent her from leaving, and that Raney retaliated against Jane Doe 1 verbally for having refused his sexual advances in the presence of other firefighters and paramedics. Doc. [212-1] at 101.  Third, the fact that Jane Doe 1 sent her demand letter through counsel further emphasizes the seriousness of Jane Doe 1's threat and intent to sue. Therefore, Defendant's duty to preserve documents was first triggered on the date that it received Jane Doe 1's demand letter -- November 14, 2017.  The trigger date is important because Defendant had a 30-day destruction policy at that time, and since the radio communication occurred on October 28, 2017, the radio communication (if it existed) would have been allegedly destroyed on or after November 27, 2017.  Thus, because Defendant had a duty to preserve as of November 14, 2017, documents relevant to Jane Doe 1's allegations of sexual harassment should have been preserved.

Next the Court must determine whether the November 14, 2017 letter put Defendant on notice that the October 28, 2017 radio communication between Raney and Jane Doe 1 was within the scope of information that should have been preserved.  "A party's duty to preserve specific types of documents does not arise unless the party controlling the documents has notice of *those documents' relevance*." *In re Old Banc One Shareholders Sec. Litig.*, No. 00 C 2100, 2005 WL 3372783, at *3 (N.D. Ill. Dec. 8, 2005) (internal citation omitted) (emphasis added).  "[T]he duty to preserve potentially discoverable information does not require a party to keep every scrap of paper.  Instead, a party is required to keep relevant evidence over which it had control and

reasonably knew or could foresee was material to the litigation." *Id.* (internal citations omitted). The Court recognizes that the events that alert a party to the prospect of litigation may only provide a limited set of information about prospective litigation such "that the scope of information that should be preserved may remain uncertain." Fed. R. Civ. P. 37, 2015 Amendment Advisory Committee Notes. Thus, the duty to preserve does not exist in a vacuum and the preservation obligation has to be evaluated through the lens of reasonableness. As a result, the Court must consider, without the benefit of hindsight, whether it was reasonable for Defendant to believe it had to preserve the alleged radio communication after November 14, 2017.

First, the letter from Jane Doe 1's counsel does not specifically describe any incident between Raney and Jane Doe 1 that occurred during a drill, over a radio communication, or on October 28, 2017. Doc. [212-1] at 101-2. Thus, without these important details, Defendant was not alerted to the possibility that the October 28, 2017 drill's incident was relevant to the lawsuit that Jane Doe 1 threatened in her demand letter. Certainly, one could imagine that relevant communications, such as emails at the Chicago Fire Department, could be subject to a litigation hold. However, to extend it to radio communications without any specific knowledge provided by Jane Doe 1 that the alleged incidents of sexual harassment occurred over a recorded radio line that was open to others on the channel is too much of stretch. Accordingly, although the November 14, 2017 demand letter, alone, created a preservation duty, it did not on its own make it reasonable for Defendant to foresee that an October 28, 2017 radio communication would be relevant to Jane Doe 1's threatened litigation.

This Court next addresses whether the other three purported notices of litigation, in combination with the November 14, 2017 demand letter, bring the October 28, 2017 radio communication within the scope of information that Defendant reasonably knew or should have

known was material to the litigation. First, Plaintiffs claim that an email dated November 20, 2017 sent from Jane Doe 1 to CFD's deputy commissioner and director of human resources, Adrienne Bryant, then forwarded to Defendant's General Counsel and EEO, gave notice to Defendant to preserve radio communications from the October 28, 2017 drill. Doc. [212-1] at 104-5. But, like the November 14, 2017 demand letter, the November 20, 2017 email does not mention the October 28, 2017 drill or a radio communication. Doc. [212-1] at 104-5. Therefore, even in combination with the November 14, 2017 demand letter, as explained above, it did not trigger Defendant's obligations to preserve any recordings of the October 28, 2017 drill's radio communications. Second, Plaintiffs cite a text message about "the incident" that Jane Doe 1 sent to "top EMS official" Mary Sheridan. Doc. [194] at 6-7. But the Plaintiffs' brief neither describes the contents of the text message, nor the date it was sent, nor did either party attach a copy as an exhibit for context. Doc. [194] at 6-7. The text message provides no evidentiary value.

Last, Plaintiffs contend that an internal complaint dated November 29, 2017 that Jane Doe 1 submitted to Defendant's Department of Human Resources triggered a duty to preserve the October 28, 2017 drill's radio communications between Raney and Jane Doe 1. Doc. [195]. Unlike the demand letter and its related email, discussed above, Jane Doe 1's internal human resources complaint put Defendant on notice that litigation concerning the drill's communications were relevant because it specifically identifies them. Doc. [195] at 10-11. The internal complaint describes the October 28, 2017 drill incident between she and Raney, that also included "probably 100 participants." Doc. [195] at 10. Jane Doe 1 continues,

> I was on Ambulance 53 . . . . Richard [Raney] was the field chief for the actual exercise . . . . He's the person calling for ambulances and direction them. . . . He called my ambulance over the radio. . . . He said something like "you are to do as I say, you are to do as you're told, do not question me." This was over the drill frequency. His voice sounded annoyed, demanding and irritated. . . . Everybody

heard this.  This was live on air. . . . *I think Richard [Raney] was retaliating because the shift before I did not accept his advances in the private quarters.*

Doc. [195] at 10 (emphasis added).  The emphasized sentence relates to allegations described in Jane Doe 1's November 14, 2017 demand letter that put Defendant on notice of imminent and reasonably foreseeable litigation concerning Raney's alleged harassment and retaliation. *Compare* Doc. [195] at 10 *with* Doc. [212-1] at 101-2.  So, Jane Doe 1's November 29, 2017 internal complaint[1] notified Defendant that the legal action she had threatened on November 14, 2017, and followed up on in an email dated November 20, 2017, also involved retaliation that occurred over a radio channel during an October 28, 2017 drill. Doc. [195] at 110; Doc. [212-1] at 101-2; Doc. [212-1] at 104-5.  Therefore, Defendant's duty to preserve that radio communication's recording, if it was recorded in the first place, was triggered when Jane Doe 1 submitted her internal complaint to human resources.  That date is November 29, 2017. Doc. [195] at 2.

Defendant also argues that, had the radio communication been recorded, Defendant was not given a reasonable amount of time to preserve it because it received notice of its relevance "*only 2 days* before the[ir] scheduled destruction . . . ." Doc. [212] at 9 (emphasis in original). Apparently, the destruction pursuant to a 30-day document retention plan was set to occur on or about December 1, 2017.[2]  Rule 37(e) contemplates "reasonable steps" to preserve and the rule's advisory committee's notes likewise "recognize[ ] that 'reasonable steps' to preserve suffice; it does not call for perfection." Fed. R. Civ. P. 37, 2015 Amendment Advisory Committee Notes.

---

[1] Doc. [195] at 12 indicates that at least two EEO Investigators and an EEOO Officer reviewed Jane Doe 1's internal human resources complaint.

[2] It is unclear why Defendant has contended that the date for destruction pursuant to the retention policy is December 1, 2019.  A 30-day retention policy would result in destruction on November 27, 2017, in which case the purported recording would have been destroyed prior to the November 29, 2017 trigger date for the duty to preserve.  However, the Court analyzes the issue above based on Defendant's representation that the date of the alleged destruction is December 1, 2017.

The question presented then is whether two days is sufficient time for a party to take action to prevent the destruction of relevant recordings. There is no categorial rule as to how much time is permitted to pass before a litigation hold is placed. Every company and entity is different and often litigation holds cannot be placed in a matter of minutes without communications to individuals in information technology and coordination with custodian of records. Not only is an entity required to identify where the relevant electronic and paper documents are located, the entity must establish the time-frame for the litigation hold, the scope and subject matters of the litigation hold, and the key players who may be involved.

This is a fact-specific inquiry and one that requires more information than provided by Defendant as to the alleged unreasonableness of two days to effectuate a litigation hold. Such an inquiry will require the Court to fully comprehend the methods by which the City of Chicago implements litigation holds and, specifically, litigation holds with respect to City recorded radio communications. The Court need not delve into this question, however, because as demonstrated below, even if the alleged recording should have been preserved, the information can be replaced by other discovery and there is no prejudice to Plaintiff Jane Doe 1.

### E. Prejudice

In 2015, Rule 37(e) was revised to more clearly identify the circumstances under which a court could impose sanctions for spoliation and also to provide guidance as to when the ultimate form of sanctions, adverse inferences and claim preclusions, could be imposed. As a result, Rule 37(e) required there be a duty to preserve, a breach of that duty, and that the information cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e). Moreover, only upon a finding of prejudice can the Court consider measures to cure the prejudice. *Id.*

"To suffer substantive prejudice due to spoliation of evidence, the lost evidence must prevent the aggrieved party from using evidence essential to its underlying claim." *Schmalz*, 2018 WL 1704109 at *3 (internal citations omitted). As stated in 2015 Advisory Committee Notes, "[t]he rule does not place a burden of proving or disproving prejudice on one party or the other[.] In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37, 2015 Amendment Advisory Committee Notes.

For the following reasons, if the radio communication was recorded then destroyed, the Court finds that both the information can be replaced by other discovery and also that there is no prejudice to Plaintiffs. First, Defendant does not dispute Plaintiffs' allegation as to the contents of the October 28, 2018 radio communication. *See, e.g.*, Doc. [30] at 14; Doc. [212] at 1. For example, Defendant's Answer admits that Jane Doe 1 answered a call from Raney over the radio during the October 28, 2017 drill, advised him that her ambulance was not part of the drill, challenged a direct order from Raney, and was advised "not to question him and to do as she was told." Doc. [30] at 14, ¶ 50. Beyond Defendant's admissions, the record suggests an overwhelming amount of evidence that would serve to avoid any prejudicial impact to Plaintiff stemming from the purportedly lost recordings. Predominantly, there is an abundance of witnesses – upwards of 100 people – that could testify to the content and tone of the radio communication based on Jane Doe 1's internal human resources complaint that noted "[e]verybody heard this. This was live on the air." Doc. [195] at 10. Jane Doe 1 also recognized this reality in her Complaint, Doc. [1] at 8,

¶ 47, and Defendant admits to the same. Doc. [30] at 13, ¶ 47.  In addition to Jane Doe 1's ability to testify as to the content and tone of the radio communication,[3] several witnesses have already been specifically identified in the record that could testify to the radio communication's content and tone.  For example, Jane Doe 1's human resources complaint noted that "field chief John Genova said 'Rainey [sic] was really harsh on you, I felt like that was uncalled for.'" Doc. [195] at 10.  Assistant Deputy Fire Commissioner Mary Sheridan can also testify to the content and tone of Raney's radio communication as she heard it during the drill. Doc. [212-1] at 48, ¶¶ 4, 7.

Last, the Court evaluates the allegedly lost radio communication's importance in the litigation. *See* Fed R. Civ. P. 37, 2015 Amendment Advisory Committee Notes (noting that an evaluation of prejudice from lost information includes an evaluation of the information's importance).  Raney's tone in the allegedly lost radio communication's recording provides limited value compared to other evidence in the record that goes directly to the retaliation claim such as what he said and how he treated her.  Further undermining the importance of Raney's tone to the litigation, to the extent the parties look towards upcoming summary judgment proceedings, Defendant has stated that it "will accept that the tone of the communication was as Jane Doe 1 describes it . . . ." Doc. [212] at 12.

Therefore, the Court finds that, even if the October 28, 2017 radio communication was recorded, its destruction did not prejudice Plaintiffs.[4]  For the foregoing reasons, Plaintiffs' Motion to Sanction Defendant for Failure to Preserve Evidence, Doc. [194], is denied in its entirety.

---

[3] In her human resources complaint, Jane Doe 1 described Raney's tone as "annoyed, demanding and irritated." Doc. [195] at 10.

[4] Accordingly, the Court need not address Plaintiffs' requested sanctions.

## II.     Plaintiffs' Motion to File an Exhibit Under Seal, Doc. [196]

Plaintiffs seek to file Exhibit B, Doc. [195], to its motion for sanctions under seal. Doc. [194-96]. Exhibit B appears to be a City of Chicago Department of Human Resources Complaint Form that was completed and submitted by Jane Doe 1. Doc. [195] at 3-12. Exhibit B includes a narrative description of Jane Doe 1's allegations against her supervisor, Richard Raney. Doc. [195] at 3-12. Exhibit B also includes a document entitled "Receipt of Materials and Information Acknowledgement Form" that indicates the Complainant and Investigator received a "Diversity and Equal Employment Opportunity Policy" and a "Business Card of the EEO Officer of Investigator." Doc. [195] at 2.

A party seeking to file materials in secret under seal must justify it and "analyze the applicable legal criteria or contend that any document . . . [that] legitimately may be kept from public inspection despite its importance to the resolution of the litigation." *Baxter Int'l v. Abbott Laboratories*, 297 F.3d, 544, 546 (7th Cir. 2002) ("So perfunctory was this motion that it could have been summarily rejected."); *see also Ne. Series of Lockton Companies, LLC v. Bachrach*, No. 12 CV 1695, 2013 WL 3989295, at *1 (N.D. Ill. Aug. 2, 2013) ("If a party claims that injury will result from public disclosure of certain information, it must provide support for such a statement."). "Simply asserting that something should be filed under seal is not enough." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 367 F. Supp. 3d 813, 816 (N.D. Ill. 2019). "Even the agreement of the parties will not justify the entry of a protective order that ought not otherwise be entered." *Id.* (citing *Jepson, Inc. v. Makita Elec. Works Ltd*, 30 F.3d 854, 858 (7th Cir. 1994)); *see also County Materials Corp v. Allan Block Corp.*, 502 F.3d 730, 740 (7th Cir. 2007). Closed proceedings "breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980). "The determination of good

cause [to seal materials] cannot be elided by allowing the parties to seal whatever they want . . . ." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co*., 178 F.3d 943, 945 (7th Cir. 1999). "[M]any litigants would like to keep confidential . . . the injuries they suffered . . . but when these things are vital to claims made in litigation they must be revealed." *Baxter Int'l, Inc*., 297 F.3d at 547 (7th Cir. 2002) (citing *Union Oil Co. v. Leavell*, 220 F.3d 562 (7th Cir. 2000)). "Whatever may have been done in the past cannot and will not justify under seal filings of things that by no stretch of the legal imagination qualify as under seal treatment." *Motorola Sols.*, 367 F. Supp. 3d at 816.

Plaintiffs' motion to seal merely advances boilerplate averments that good cause exists to seal Exhibit B, Doc. [195]. For example, Plaintiffs contend that the information contained in Exhibit B is highly private and sensitive information, and that the parties have consistently filed documents containing private and/or sensitive information under seal. Doc. [196]. Lots of documents in a sexual harassment claim are private and sensitive. The motion does not specifically explain *why* there is good cause to seal Exhibit B under this Circuit's case law. *See* Doc. [196]. Nor does it explain how the document contains information that should not be subject to public scrutiny. Doc. [196]. In fact, the face of the document Plaintiffs seek to file under seal contains important and pertinent information directly underlying allegations Jane Doe 1 advances in her publicly filed Complaint. *Compare* Doc. [195] *with* Doc. [1]. This information is the type of document that *Baxter* indicates are "things" that "are vital to claims made in litigation" that "must be revealed." *Baxter Int'l, Inc*., 297 F.3d at 547. Last, Plaintiffs' statement that the parties have consistently filed documents containing private and/or sensitive information under seal is not the appropriate legal inquiry. *See Motorola Sols.*, 367 F. Supp. 3d at 816.

For the reasons stated above, Plaintiffs' motion to file Exhibit B under seal is granted in part and denied in part. Jane Doe 1's identity has been preserved during these proceedings and thus, the Court will not order the public disclosure of this information until it receives further information. Plaintiff Jane Doe 1 may be entitled to publicly file a suitable redacted version. Before filing a publicly redacted version, Plaintiff Jane Doe 1 shall provide the Court *in camera* with a proposed order containing a version redacting only what she believes to be so sensitive as to warrant non-public treatment along with a memorandum explaining why the document shall be maintained under seal with citation to relevant authority. As guidance, the Court advises Jane Doe 1 not to redact any information that is vital to her claims and that has been disclosed already in the public arena. The proposed redacted version and memorandum are due within 14 days of the entry of this Opinion and Order.

## III.    Plaintiffs' Motion to Strike, Doc. [216]

Plaintiffs next move to strike Defendant's Exhibits 8 and 8-1 attached to its response to Plaintiffs' motion for sanctions. Exhibit 8 is a Declaration of Daniel Casey, City of Chicago's Deputy Director, Public Safety Information Technology, Office of Emergency Management and Communications ("OEMC"). Doc. [212] at 54. Attached to Casey's Declaration is Exhibit 8-1, a document entitled "Application for Authority to Dispose of Local Records" dated May 14, 2002. Doc. [212-1] at 57. According to Casey's Declaration, the Application for Authority to Dispose of Local Records reflects OEMC's record retention policy that was in effect for 2017. R. [212-1] at ¶ 6. Casey's declaration states that the recorded channels used by the Chicago Fire Department during the October 28, 2017 drill would have been treated as 9-1-1 recordings as set forth in section 11.11 in Exhibit 8-1. Doc. [212-1] at 54-55. Section 11.11 of the Application for Authority to dispose of Local Records states that, as of April 14, 2015, recordings of 9-1-1 calls are to be

retained for "thirty (30) days after creation of the recordings, then dispose[d] of, unless the recordings are deemed evidence in any criminal, civil, or administrative proceeding and then the recordings must only be destroyed upon final disposition and an order from the court . . . ." Doc. [212-1] at 88.

Plaintiffs argue that these two documents should be stricken because the Application for Authority to Dispose of Local Records should have been, but was not, produced pursuant to Plaintiffs' previous requests for documents. *See* Doc. [216] at ¶¶ 1-4, 8. Plaintiffs' reason that Defendant's delay in producing this discovery led Plaintiffs to believe that a document retention policy from the year 1984 was applicable and current. Doc. [216] at ¶ 8.

Plaintiffs' motion is brought under Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion is not a pleading. Rule 12(f) is not the proper mechanism for striking an exhibit attached to a response to a motion for sanctions. *Id.*

Next, Plaintiffs argue that these documents should be stricken pursuant to the Court's "inherent power to strike an exhibit that is not [ ]properly before the court." Doc. [216]. Indeed, "it is within the district court's discretion to strike an unauthorized filing." *Cleveland v. Porca Co*., 38 F.3d 289, 297 (7th Cir. 1994) (citing *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). Rule 26(a)(1)(A)(ii) requires a party to provide to the other party a copy or description "of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." *Shott v. Rush Univ. Med. Ctr*., No. 11 CV 50253, 2014 WL 7665075, at *1 (N.D. Ill. Nov. 6, 2014), *aff'd*, 652 F. App'x 455 (7th Cir. 2016)). Under Rule 37(c)(1), if a party fails to

"provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.*

Therefore, the Court addresses whether Defendant had an obligation to disclose OEMC's record retention policy in the first place. The document request at issue requested "document retention policies as related to the Chicago Fire Department (or the City of Chicago as applied to the Chicago Fire Department) applicable from January 1, 2014, to present." Doc. [216-4] at 3. To which, Defendant objected in part as "overly broad and vague." Doc. [216-4] at 3. Importantly, Plaintiffs' document request did not narrowly request OEMC's document retention policies. Doc. [216-4] at 3. The Federal Rules of Civil Procedure require requests for production to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Had Plaintiffs specifically wanted OEMC's retention policy or the retention policy concerning recorded radio communications, then Plaintiffs should have specifically requested it pursuant to Rule 34(b)(1)(A). Instead, Plaintiffs submitted a broad discovery request covering primarily CFD's document retention policies. Therefore, the Court finds that Plaintiffs never requested the document that Defendant attached as Exhibit 8-1 and so Defendant never incurred an obligation to produce it in the first place.

Even if Defendant should have previously produced OEMC's record retention policies, the Seventh Circuit "has identified the following relevant factors to use when evaluating whether a failure to disclose was substantially justified or harmless: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Shott*, 2014 WL 7665075, at *1 (quoting *Tribble v. Evangelides*,

670 F.3d 753, 760 (7th Cir. 2012)). "The determination of whether a Rule 26(a) violation is justified or harmless is left to the discretion of the district court." *Shott*, 2014 WL 7665075, at *1 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Here, there is no indication whatsoever that Plaintiffs were prejudiced by not learning about OEMC's record retention policy that was in effect for 2017 in response to their motion for sanctions. Plaintiffs' best argument that Defendant's delay in producing this discovery caused prejudice is that it led them to *believe* that Defendant's 1984 document retention policy was the most current document retention policy. Doc. [216] at ¶ 8. Plaintiffs do not articulate actual ways in which Defendants' post-discovery disclosure of OEMC's record retention policy harmed Plaintiffs or impacted their case strategy. Moreover, the Court finds that any potential prejudice from the non-disclosure has been cured. Plaintiffs have now obtained the applicable retention policy and had an opportunity to substantively address it in both their reply in support of their motion for sanctions and in this motion to strike. Docs. [216, 218]. In fact, other courts have found no prejudice or surprise where a party filed an undisclosed document at later stages than the instant litigation, including dispositive motions for summary judgment. *See Shott*, 2014 WL 7665075, at *2-3 (denying motion to strike documents filed in a response to a motion for summary judgment that were not produced previously in discovery); *see also Dauska v. Green Bay Packaging*, No. 12-C-925, 2014 WL 3843547, at *6-9 (E.D. Wis. Aug. 5, 2014) (same). Plaintiffs neither allege likelihood for disruption at trial nor is such apparent to this Court. Therefore, for the reasons stated above, the Court denies Plaintiffs' motion to strike, Doc. [216], in its entirety.

**IV.     Conclusion**

For the foregoing reasons, Plaintiffs' motion to sanction Defendant for failure to preserve evidence, Doc. [194], is denied in its entirety, Plaintiffs' motion to file Exhibit B thereto under seal, Doc. [195-96], is granted in part and denied in part, and Plaintiffs' motion to strike, Doc. [216], is denied in its entirety.  Plaintiff Jane Doe 1 shall provide the Court *in camera* with a proposed order containing a proposed publicly redacted version that censors only what is so sensitive as to warrant non-public treatment consistent with the discussion herein along with a memorandum explaining why the document shall be maintained under seal with citation to relevant authority.  The proposed redacted version and memorandum are due by July 23, 2019.

**SO ORDERED.**

Dated:  July 9, 2019

Sunil R. Harjani
United States Magistrate Judge